UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH FYE,

     Plaintiff,

v.                                 CASE NO.  8:05-cv-2012-T-26TGW

UNISYS CORPORATION,

     Defendant.

_____/

### O R D E R

    This cause comes before the Court on Defendant's Motion for Summary Judgment (dkt. 27) and supporting exhibits (dkts. 28 & 40) and Plaintiff's cross Motion for Summary Judgment (dkt. 38) and supporting exhibits (dkts. 18-26, 30-34 & 36-37).  The parties filed memoranda in opposition to the respective cross Motions for Summary Judgment (dkts. 48 & 49).

### Background & Claims

    This is an action for legal and equitable relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq..  In Count I of the Complaint, Plaintiff Elizabeth Fye ("Fye") alleges that Defendant Unisys Corporation ("Unisys") wrongfully denied her Short-Term Disability ("STD") benefits claim.  In Count II, Fye alleges that Broadspire Services, Inc. ("Broadspire") wrongfully denied her Long-Term Disability ("LTD") benefits claim.

    Unisys hired Fye as a software engineer in September, 2001.  (Dkt. 35, Massman

Declaration, ¶ 2.) Fye was covered under the Unisys STD Plan and also had purchased coverage for herself under the LTD Plan sponsored by Unisys. To be entitled to STD benefits, Fye must prove that she is "disabled." "Disability" is defined by the STD Plan as follows:

> When you miss work (full days or partial days) for more than two consecutive weeks, to be considered disabled, both of the following must apply:
>
> You must be under the treatment of a licensed physician who certifies the disability,
>
> AND
>
> It can be verified by The Hartford[1] (the third-party administrator for the Plan) that the employee is unable, due to her disability, to perform the essential functions of her regular occupation at any job site within Unisys - essential functions include the ability to work a normal work schedule.

(Dkt. 1, Complaint, Ex. A, p. 156.) Under this Plan, Unisys pays the full cost for this benefit for up to 26 weeks and the employee pays nothing. (Id. at 150.) Unisys directly provides the STD benefits, with the claims reviewed on behalf of the Plan by Broadspire. (Id. at Ex. B, p. 247.) Unisys is the plan administrator and it carries out this function through the Unisys Employee Benefits Administrative Committee ("Committee"). (Id. at 240.)

Under the LTD Plan, Unisys employees who elect to do so pay the full cost for income protection by paying premiums for an insurance contract issued by Broadspire. (Id. at Ex. A, p. 161.) Broadspire is the plan administrator for this Plan. (Id. at Ex. B, p. 240.) To be entitled to LTD benefits, a claimant must prove that she is unable to work a normal work week schedule

---

[1] Effective January 1, 2003, Kemper Insurance Companies ("Kemper") replaced The Hartford as the third party administrator for the STD Plan. Electronic e-mail notices were mailed to active employees regarding this change and mailings were sent to individuals who already were on short-term disability. (Dkt. 1, Complaint, Ex. C.) Later in 2003, Kemper changed its name to Broadspire.

due to a "disability" that has lasted longer than 26 weeks. (Id. at Ex. A, p. 161.) "Disability" is

defined by the LTD Plan as follows:

> You are unable to work your normal work schedule due to the disability.
>
> You are being treated for your illnesses, injury or pregnancy by a licensed physician.
>
> It can be verified by (Broadspire) that you are unable, due to your disability, to perform the essential functions of your regular occupation at any job site within Unisys (essential functions include the ability to work a normal work schedule).

(Id. at 171.)

> The Plans further provide that:
>
> The plan administrator has the authority to control and manage the operation of and the administration of the plans. All final decisions regarding the administration and interpretation of the plans are retained by the plan administrator or its designee. The plan administrator has the discretionary authority to supply omissions, make factual determinations, and to decide any dispute that may arise regarding the rights of participants. All such decisions are binding and conclusive on all interested parties.

(Id. at Ex. B, p. 240.)

Fye alleges that she became "disabled" as that term is defined under the Plans due to

severe anxiety, panic attacks, and depression, causing her to seek STD and LTD benefits.

According to the Job Analysis Worksheet completed by Unisys, her job required that she work

with others for 3 hours out of an 8 hour workday, and that she work under deadlines for 8 hours

out of an 8 hour workday. (Dkt. 20, Ex. D, p. 43.) The job description is as follows:

> Models and applies software engineering methods and techniques to the design, definition, development, evaluation, integration, qualification and/or support of complex products, tools, or technologies in one or more areas of expertise. May work independently or cooperatively with other software developers, often

> assuming technical and project leadership roles.  Considered a technical authority in a specific application.  May function as a technical consultant or researcher.

(<u>Id.</u>) Fye claims that she was entitled to STD benefits for 26 weeks, but was only paid benefits from February 27, 2003, to July 1, 2003 (18 weeks).  She seeks benefits for the time frame of July 2, 2003, through August 27, 2003 (8 weeks), in the amount of $11,298.48 ($1,412.32 per week).  Fye seeks LTD benefits for the period of August 27, 2003, through August 27, 2005 (24 months), consisting of payments equal to 66 2/3 % of her pre-disability monthly earnings for a total of $97,920.00 (or $4,080.00 x 24).

According to her primary care treating physician, Dr. Karen L. Mutter, Fye began experiencing symptoms from work-related stress in August, 2002.  (Dkt. 35, Ex. 12.)  Fye applied to work at home full time, and by October 2002, she was telecommuting full time and interacting with her co-workers primarily by telephone.  (<u>Id.</u> at Exs. 12, 14, & 36.)  Fye began therapy with Sue Brewer, a licensed clinical social worker, on October 15,2002.  Her symptoms at that time included "uncontrollable crying, suicidal ideation, lowered mood, isolating herself, and anxiety."  (<u>Id.</u> at Ex. 14.)  Despite these symptoms, Fye was able to continue working until February 26, 2003.  (<u>Id.</u>)  The next day, on February 27, 2003, Fye voluntarily took herself out of work.  (<u>Id.</u>)

On March 4, 2003, Fye presented a telephonic claim for STD benefits.  (<u>Id.</u> at Ex. 9.)  Fye's claim for benefits was allowed initially while the third-party administrator, Kemper, collected necessary documentation.  (<u>Id.</u>)  Fye's claim was first denied effective March 27, 2003, and the denial was communicated to Fye in a letter dated April 16, 2003.  (<u>Id.</u>)  Fye appealed the denial and submitted additional documentation from Dr. Mutter and Ms. Brewer.  (<u>Id.</u> at Exs. 10,

12, & 14.)  Based on this additional information, Fye's STD benefits were reinstated retroactive

to March 27, 2003.  The reinstatement was communicated to Fye in a letter dated June 5, 2003.

(Id. at Ex. 16.)

On June 11, 2003, Kemper requested additional medical information to support

Fye's ongoing disability.  (Id. at Ex. 21.)  Kemper concluded that the information provided

thereafter did not allow Kemper to verify that Fye was unable to perform the essential functions

of her regular occupation at any job site within Unisys and denied further benefits to her,

effective July 2, 2003.  (Id.)  That denial was communicated to Fye in a letter from Kemper dated

July 24, 2003.  (Id.)  The letter also provided several examples of additional information that

might support her appeal, "such as, but not limited to . . . diagnostic test results; functional

capacity evaluations; physical therapy notes, office notes, consultation notes, progress reports;

current x-rays, CT scans and EMG to support your diagnosis and claim for disability; and which

provides specific functional abilities, including any and all restrictions and limitations."  (Id. at

Ex. 21.)  Fye appealed Kemper's denial.  (Id. at Ex. 25.)  The Committee retained an independent

reviewing psychiatrist, Dr. Reginald A. Givens, who is board certified in psychiatry and

neurology and also as a medical consultant.  (Id. at Ex. 37.)  Dr. Givens conducted a review of all

medical records submitted by Fye up to that time and concluded that there was no objective

evidence to support that Fye had any significant impairment psychiatrically.  (Id.)

The Committee upheld the denial of STD benefits for the period beginning July 2, 2003,

finding that Fye's absence from work did not meet the Plan requirement that it could be verified

that Fye was unable, due to her disability, to perform the essential functions of her regular

occupation at any job site within Unisys. (Id.) Fye was advised of the Committee's denial of her

appeal on October 30, 2003. (Id. at Ex. 39.) Fye then retained counsel, who wrote on her behalf

requesting an additional review/appeal of the Committee's decision. (Id. at Ex. 40.) The

Committee granted the request and gave Fye and her counsel 60 days to submit any additional

documentation she wanted the Committee to consider in connection with its reconsideration of

her appeal. (Id. at Ex. 43.) Through counsel, Fye submitted her own affidavit and a number of

additional medical records from Ms. Brewer and from Fye's treating psychiatrist, Dr. Alice

Morales. (Id. at Exs. 45-52.) While the Committee's decision was pending, Fye's counsel

submitted additional medical documentation from Dr. Morales and Ms. Brewer. (Id. at Exs. 53-

56.) The Committee met on August 6, 2004, to reconsider Fye's appeal. At that time, the

Committee considered the full administrative record, including the new information submitted by

Fye's counsel in June and July, 2004. (Dkt. 35, Massman Declaration, ¶ 11.)

In addition to Fye's treatment records and other documentation from Drs. Mutter and

Morales and Ms. Brewer, the Committee considered peer reviews conducted by two

Kemper/Broadspire psychologists, Lawrence Burstein and Robert Dawes, as well as independent

peer reviews by two other physicians, Dr. Givens' review from October 2003, and an additional

independent review by Dr. Robert G. Slack, who is board certified in psychiatry and neurology

and is a professor of clinical psychiatry at the University of Ilinois College of Medicine at

Rockford. (Id.) These peer reviewers' opinions can be summarized as follows:

Lawrence Burstein: Dr. Burstein, a PhD psychologist, reviewed Fye's

records on three occasions. (Id. at Exs. 15, 20, & 65.) His review in May, 2003, was the basis upon which Kemper determined that Fye was entitled to STD benefits through July 7, 2003. Dr. Burstein's initial determination was based on documentation provided by Ms. Brewer, which indicated Fye was suffering from six to eight panic attacks per day that lasted up to 45 minutes. (Id. at Ex. 15.) Dr. Burstein determined at that point that Fye was not able to perform the core elements of her occupation as a software engineer while experiencing such symptoms. (Id.)

Dr. Burstein reviewed Fye's claim again on July 18, 2003, and had the benefit of a much more developed record, including the additional records from Dr. Morales and Ms. Brewer. (Id. at Ex. 20.) Dr. Burstein also conducted a telephone peer-to-peer consultation with Ms. Brewer that same day. (Id.) Dr. Burstein reported that Ms. Brewer indicated to him that Fye likely would be able to return to work in a different department at Unisys or would be able to work at her same occupation for a different employer. (Id.) Based on his consultation with Ms. Brewer and his review of the additional file materials, Dr. Burstein concluded that Fye was not psychologically incapable of doing the core elements of her occupation. (Id.)

Dr. Burstein conducted a final peer review in July, 2004, that encompassed all of the medical records submitted from Fye's treating providers, all of the peer review opinions gathered by Kemper/Broadspire and the Committee, and all of the letters and other documentation submitted by Fye and her counsel in support of her claim. (Id. at Ex. 65.) Dr. Burstein noted several treatment records from Ms. Brewer since July, 2003, that documented Fye's self reports that she was feeling better and that her anxiety was decreasing. (Id.) Dr. Burstein noted that both Ms. Brewer and Dr. Morales appeared to be relying solely upon Fye's

7

subjective reports and complaints, rather than any examination findings or even specific examples of Fye's symptoms. (Id.)

Dr. Burstein also noted that the letter report by Ms. Brewer of six to eight panic attacks per day, lasting 45 minutes, upon which he had relied in finding her to be unable to work in her own occupation in May, 2003, were not documented in the therapist's contemporaneous treatment notes. (Id.) When Dr. Burstein asked Ms. Brewer if she thought Fye would be able to return to work at another job, she responded "probably." (Id. at Ex. 51.) Dr. Burstein noted that while Fye in a May, 2004, affidavit stated that she continued to suffer from this frequency and duration of panic attacks, her providers made no reference to such intensity of illness in their treatment notes and, in fact, the more recent notes contained subjective reports and impressions that Fye's symptoms were improving. (Id. at Ex. 65.) Dr. Burstein concluded that "in the absence of examination findings documenting impairments in the claimant's cognitive or emotional functioning, it cannot be substantiated that she was unable to perform the core elements of her occupation from a psychological perspective, from 7/02/03 forward." (Id.)

Dr. Robert Dawes: Dr. Dawes, a PhD psychologist, reviewed Fye's file in September of 2003 and again in December of 2003 to encompass additional materials submitted after the September review. (Id. at Exs. 35 & 63.) Dr. Dawes concluded in September, 2003, that:

> subsequent to 07/02/03, the claimant's file lacks specificity with regard to anxiety and/or depressive features that preclude performing tasks within the cognitive realm of functioning. With regard to emotional functioning, the claimant's affect is described as congruent, constricted, and appropriate. There are indications from the treating psychiatrist, that the claimant is able to compose herself. The clinical social worker documentation, fails to provide any clinical observations of the claimant's current medical status to support a functional impairment that precludes work.

8

(Id. at Ex. 35.)

In his review in December, 2003, Dr. Dawes had additional materials provided by
Dr. Morales, Fye's treating psychiatrist, including a Behavioral Health Clinician Statement on a
Kemper form dated 8/20/03 and progress notes from May, June, and August, 2003. (Id. at Ex.
63.) Dr. Dawes concluded that the additional documentation submitted by Dr. Morales "fails to
support significant impairments in cognitive and/or emotional function that would preclude the
claimant from performing her job as a software engineer." (Id.)

Dr. Reginald A. Givens: As discussed above, the Committee relied in part upon
Dr. Givens' independent peer review in denying Fye's appeal in October, 2003. In
addition to reviewing all of the medical records then available to the Committee, Dr.
Givens attempted to have a peer-to-peer consultation with Dr. Morales, without success,
and succeeded in having a peer-to-peer consultation with Ms. Brewer on September 29,
2003. (Id. at Ex. 37.) At the time of the telephone conference, Ms. Brewer had last seen Fye on
September 16, 2003. (Id.) Ms. Brewer reported to Dr. Givens that Fye was improving, although
she did have fairly significant anxiety. (Id.) Ms. Brewer told Dr. Givens that she had not done
any objective testing, such as a mental status exam, or neuropsychological testing to support her
impression that Fye suffered from cognitive dysfunction. (Id.) Dr. Givens concluded,
"[a]lthough there have been reports of anxiety and insomnia, there is no objective evidence of
cognitive dysfunction throughout the medical records or information obtained during the
teleconference. Therefore, there is no objective evidence to preclude Ms. Fye from performing
her own occupation on a full-time basis as of 07/02/03." (Id.) Dr. Givens also completed a

Mental Residual Functional Capacity Assessment, finding Fye to be not significantly limited in

multiple categories of mental capacity, including understanding and memory, sustained

concentration and persistence, social interaction, and adaptation. (Id.) In any categories where

Dr. Givens failed to find that Fye was not significantly limited, he found that there was no

evidence of limitation for the category within the entirety of her medical records. (Id.)

Dr. Robert G. Slack: After Fye's counsel submitted additional documentation in June,

2004, the Committee retained another independent reviewing psychiatrist, Dr. Slack. After

conducting a full review of the records of all of Fye's treating providers and attempting, without

success, to have substantive discussions with Dr. Morales and Ms. Brewer, Dr. Slack concluded,

"[t]here is no evidence in this record that Ms. Fye lost the option or choice of performing the

essential requirements of her own occupation from 07/02/03 onward due to any psychiatric

disorder." (Id. at Ex. 64.) Dr. Slack also completed a Mental Residual Functional Capacity

Assessment and found that Fye was not significantly limited in any category of mental

functioning. (Id.)

When it reconsidered Fye's appeal on August 6, 2004, the Committee had before it all of

Fye's medical records and documentation she had submitted from her treating providers, all of

the information submitted by her counsel, and the peer reviews of Kemper /Broadspire providers

Drs. Burstein and Dawes, as well as the independent reviews of Drs. Givens and Slack. (Dkt. 35,

Massman Declaration, ¶ 11.) The Committee again upheld the denial of STD benefits for the

period beginning July 2, 2003, finding that Fye's claim for this period did not meet the plan

requirement that "it can be verified by Broadspire that you are unable, due to your disability, to

perform the essential functions of your regular occupation at any job site within Unisys." (Id. at

Ex. 67.)  The Committee recognized that Fye and her treating professionals:

> claim that (Fye) cannot perform the essential functions of (her) occupation due to
> impairments in cognitive functioning, specifically in regard to your memory and
> concentration, as well as impairments to your emotional functioning, including a
> very high frequency of panic attacks.  However, your treating professionals have
> provided no medical support to substantiate their conclusions regarding your
> impairments and, for the most part, have not even conducted any examinations to
> verify your impairments.  Further, it does not appear that your treating
> professionals' opinions are based on behavior that they observed; rather, their
> conclusions are based only on your descriptions of your condition provided to
> them.  Consequently, the Committee agrees that there is no basis provided to
> Broadspire to verify that your impairments prevent you from performing the
> essential functions of your regular occupation at any job site within
> Unisys.

(Id.)  The Committee noted that it was aware that Fye had been awarded a disability benefit by

the Social Security Administration.  (Id.)  The Committee advised that it had considered that fact

but did not find it to be dispositive because the standards under the Unisys STD plan are not the

same standards used by the Social Security Administration.  (Id.)

With regard to the LTD claim, Fye was sent a denial letter from Broadspire, dated

January 8, 2004, informing her, "[b]ased upon the fact that you did not complete the 26 week

elimination period, it has been determined that you do not qualify for Long Term Disability,

therefore, your benefits are denied effective 8/28/03."  She appealed this decision by letter dated

June 3, 2004, submitting the same documentation as that sent during the STD appeal, but the

denial was upheld for the same reason in a letter from the Broadspire dated September 10, 2004.

(Dkt. 36, Ex. G, pp. 1-2.)

## Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact.

Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to

find for the nonmoving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574 (1986) (citation omitted). On a motion for summary

judgment, the court must review the record, and all its inferences, in the light most favorable to

the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Having done so,

the Court finds that Unisys is entitled to the entry of final summary judgment in its favor.

## Discussion

The Unisys STD Plan expressly reserves to Unisys as plan administrator the discretionary

authority to supply omissions, make factual determinations, and to decide any disputes that may

arise. Under ERISA, the review of decisions made by plan administrators vested with discretion

is governed by the arbitrary and capricious standard. Firestone Tire & Rubber Co. v. Bruch, 489

U.S. 101 (1989); HCA Health Serv. v. Employers Health Ins., Co., 240 F.3d 982 (11th Cir.

2001); see also Kirwan v. Marriott Corp., 10 F.3d 784, 788 (11th Cir. 1994) (requiring "express"

grant of discretionary authority); Jett v. Blue Cross & Blue Shield, 890 F.2d 1137, 1139 (11th

Cir. 1989) (language stating that determinations are "final and conclusive" and that the plan

administrator has the "exclusive right to interpret" the plan constitutes discretionary authority).

The Eleventh Circuit has adopted a six-step approach when reviewing all ERISA plan benefit

denials:

12

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to affirm or deny it.

Williams v. BellSouth Telecomm., Inc., 373 F.3d 1132, 1137-38 (11th Cir. 2004)

(footnotes omitted).

When assessing the Committee's decision, the Court's inquiry is limited to the facts known to the Committee when the decision was made. Lee v. Blue Cross & Blue Shield, 10 F.3d 1547, 1550 (11th Cir. 1994). If this Court agrees with the Committee's decision, then it must uphold the decision. Williams, 373 F.3d at 1138. If this Court finds that the decision is "wrong," then the Court must decide whether the Committee's "wrong"decision is reasonable. HCA Health Serv., 240 F.3d at 994. Not until both the "wrong" and "reasonableness" determinations are made should the Court look at the conflict of interest issue. Brown v. Blue Cross & Blue Shield, Inc., 898 F.2d 1556, 1567 (11th Cir. 1990). If a conflict exists, this Court must apply the

13

heightened arbitrary and capricious standard. Under this standard, the plan administrator bears

the burden of proving that the decision was not tainted by self-interest. HCA Health Serv., 240

F.3d at 994. To overcome this burden, the administrator must show that the decision benefitted

the participants and beneficiaries of the plan as a class. Id. at 995. A conflict exists when an

employer administers its own self-funded plan. Hickey v. Digital Equip. Corp., 43 F.3d 941, 946

(4th Cir. 1995). Thus, the heightened arbitrary and capricious standard is the standard of review

applicable to Count I because Unisys administers its own self-funded STD Plan.

Fye bears the burden of proving her entitlement to benefits under the Plan. Horton v.

Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998) (observing that plaintiff

suing under ERISA § 113 2(a)(1)(B) bears the burden of proving entitlement to contractual

benefits). Fye fails to meet this burden. To be entitled to STD benefits, Fye must prove that she

is "disabled" as that term is defined by the STD Plan. Under the Plan, an employee is "disabled"

if two requirements are met: (1) the employee is under the treatment of a physician who certifies

the disability; and (2) it can be verified that the employee is unable, due to her disability, to

perform the essential functions of her regular occupation. It is undisputed that Fye satisfied the

first requirement that she was under the treatment of a physician, Dr. Morales, who certified the

disability. Based on the evidence in the administrative record, however, it is clear that Fye did

not meet the second requirement because the third-party administrator could not verify that she

was unable, due to any disability, to perform the essential functions of her regular occupation at

Unisys.

Four qualified health care professionals -- two psychiatrists and two doctorate level psychologists -- reviewed the medical documentation submitted by Fye, but were not able to verify her disability because of the lack of objective medical evidence to support the certification of her treating providers. The peer reviewers also identified several inconsistencies in the treating providers' conclusions and between their conclusions and their records of Fye's own self-reports of her symptoms. Two of those providers are affiliated with Kemper/Broadspire, and two of them were retained by the Committee to conduct independent reviews. The peer reviewers all identified the same types of objective medical evidence that was lacking from Fye's file -- formal mental status examinations, standardized psychological testing results, or direct observations by the treating providers to quantify the severity and intensity of the impairments that Fye reported to them in her treatment sessions.

The Committee even agreed to reconsider Fye's appeal to give her an additional opportunity to provide this objective medical evidence after she had retained counsel. Instead of taking this opportunity to submit the objective medical evidence, Fye argued instead, through her counsel, that the Committee should accept the opinions of her treating providers without question, in essence arguing that the Committee should ignore the requirements of the Plan documents. (Dkt. 35, Ex. 45, pp. 9-10.) The Committee was not "wrong" in relying on the unanimous conclusion of the four peer reviewers in its decision to uphold the denial of STD benefits. See Muzyka v. UNUM Life, 2006 WL 2613726 (11th Cir. Sept. 13, 2006) (unpublished opinion) (holding that denial of long-term benefits was not "wrong" because there was no evidence, other than conclusory and at times inconsistent statements by the treating physician

15

based on self-reporting, to document any decrease in functional capacity); Tsoulas v. Liberty Life
Assur. Co. of Boston, 454 F.3d 69 (1st Cir. 2006) (determining that insurer's decision was not
"wrong" because the only evidence of plaintiff's cognitive problems was her own self-reported
symptoms); Stiltz v. Metro. Life Ins. Co., 2006 WL 2534406 (N.D. Ga. Aug. 20,2006) (stating
that insurer's decision was not "wrong" given the subjective nature of plaintiff's reports and his
treating physician's opinions).

Fye argues that the plan administrator imposed an "objective evidence" requirement that
was not set forth in the Plan itself. However, the second prong of the STD plan's definition of
disability expressly requires proof from which the third-party administrator can independently
determine the functional impairments that render the claimant unable to perform the essential
functions of her regular occupation. The plain language of the Plan provision so requires, and
the Committee, using its discretionary authority, consistently interpreted the Plan in that manner.
Fye concedes that "everyone involved in Fye's claim" consistently applied an objective evidence
standard, dating back to Kemper's very first denial of the claim in a letter dated April 16, 2003.
(Dkt. 38, p. 21.)

Perhaps more importantly, even if the STD Plan itself did not expressly require objective
evidence from which the third-party administrator could verify Fye's impairments, the Eleventh
Circuit held in Watts v. BellSouth Telecomms., Inc., 2007 WL 542436 (11th Cir. Feb. 22, 2007),
that when a plan that puts the burden on the claimant to prove that she is disabled, "it is implicit
in the requirement of proof that the evidence be objective." 2007 WL 542436, at *1 The court
held that "the objective evidence requirement. . . assures claimants are treated fairly and with

16

parity by providing that coverage decisions are not based on varying subjective expressions by claimants of a disease, illness or condition with which they have been diagnosed. That is, it requires claimants to establish that the diagnosed disease, illness or condition results in an actual disability, not just a perceived one." Id.; see also Fisk v. Metro. Life Ins. Co., 347 F. Supp. 2d 1271, 1286-87 (S.D. Fla. 2004) ("Where a plan requires proof of continued disability, the very concept of proof connotes objectivity. . . . In the absence of a requirement of objective evidence, the review of claims for long-term disability would be meaningless because a plan administrator would have to accept all subjective claims of the participant without question.") (citation and internal quotation omitted); Hufford v. Harris Corp., 322 F. Supp. 2d 1345, 1356 (M.D. Fla. 2004) (plan administrators have a duty to investigate and seek objective support for claimant's subjective complaints, as reliance on subjective complaints, without more, would result in plan administrators paying virtually all claims).

Even if the Committee's decision was wrong, it was reasonable and not tainted by self-interest. Brown, 898 F.2d at 1566-68; HCA Health Serv., 240 F.3d at 994. "A conflicted fiduciary should receive deference when it demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interests of the participants and beneficiaries." Brown, 898 F.2d at 1568. The Court's role at this stage is limited "to determining whether the Committee's decision was made rationally and in good faith, not whether it was right." Griffis v. Delta Family-Care Disabilty & Survivorship Plan, 723 F.2d 822 (11th Cir. 1984) (citation omitted). If a decision was reasonable, it must be upheld, even if there is evidence that would support a contrary decision. Jett, 890 F.2d at 1139-40. A review of the

17

record demonstrates that the Committee's benefits determination was reasonable. See Eady v. American Cast Iron Pipe Co., 2006 WL 3147298 (11th Cir. Nov. 3, 2006) (unpublished opinion)(administrator's decision was not unreasonable because it was supported by peer reviewer's conclusions); Wangenstein v. Equifax, 2006 WL 2220822 (11th Cir. Aug. 4, 2006) (unpublished opinion) (administrator's decision was not unreasonable because it did not ignore plaintiff's doctors' opinions and instead placed greater reliance on the opinions of its peer reviewers).

Further, a technically conflicted plan administrator can purge the taint of self-interest by demonstrating that its decision was thoroughly investigated and not predetermined. See Muzyka, 2006 WL 2613726. It is undisputed that the Committee thoroughly investigated Fye's claim not once, but twice. Under the Plan, Fye was entitled to a single, final appeal to the Committee. After issuing its decision adverse to Fye in July of 2003, the Committee granted Fye's request for reconsideration of that appeal and allowed her another opportunity to submit the type of objective medical evidence needed to support her claim. In addition, the Committee did not rely solely on the peer review determinations of its third-party administrator, but instead sought independent opinions from two other highly qualified peer reviewers. Thus, the Committee's decision on Fye's STD claim under the heightened arbitrary and capricious standard should be upheld.

Fye argues that the termination of STD benefits was wrong, unreasonable, and showed conflict because the Committee relied on the findings of peer reviewers who reviewed only medical records and did not conduct a face-to-face examination of Fye. Fye urges that there should be a face-to-face examination in those disability cases that involve mental, rather than

18

physical, impairments due to the inherent subjectivity of a psychiatric diagnosis. Fye cites no

legal authority for her argument. The United States Supreme Court has held that opinions of

treating physicians are not entitled to any greater deference than those of reviewing physicians in

ERISA cases. Black & Decker Disab. Plan v. Nord, 538 U.S. 822, 831 (2003); see also Watts,

2007 WL 542436, at *3. In addition, imposing an independent medical examination requirement

on Unisys would be inconsistent with ERISA, because ERISA places the burden on the claimant

to demonstrate that she is entitled to benefits under the plan, and not on the administrator to

demonstrate that the claimant is not disabled. Horton, 141 F.3d at 1040. Finally, Fye asserts that

the Committee's decision did not properly consider the Social Security Administration's ("SSA")

decision, which gives deference to the treating physician opinions, that she was disabled.

However, the record shows that the Committee did consider the SSA decision and found that it

was not dispositive in an ERISA case. The Eleventh Circuit Court of Appeals has indeed held

that an SSA decision is not determinative in an ERISA case. Paramore v. Delta Airlines, Inc.,

129 F.3d 1446, 1452 n. 5 (11th Cir. 1997); Kirwan v. Marriott Corp., 10 F.3d 784, 790 n. 32

(11th Cir. 1994).

Turning to Count II of the Complaint, the Court finds that Unisys is likewise entitled to

the entry of final judgment in its favor on Fye's LTD benefits claim. Unisys is not the proper

defendant for Fye's LTD benefits claim because it is not the plan administrator for the LTD Plan.

To be a proper defendant on an ERISA benefits denial claim, the employer must have acted as

the plan administrator and retained complete discretionary authority over the plan. See Garren v.

John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997) (insurer was not proper

19

defendant because it did not exercise any discretion, responsibility or control over administration of plan); Tookes v. Metro. Life. Ins. Co., 2006 WL 870313, *9 (N.D. Ga. March 31, 2006) (employer was not proper defendant because it delegated all discretionary authority for claims determinations to insurer); Henderson v. TransAmerica Occidental Life Ins. Co., 120 F. Supp. 2d 1278, 1282 (N.D. Ala. 2000) (employer was not proper defendant because it did not exercise any control over insurer's decision to deny plaintiff s claim). The LTD Plan specifically identifies Broadspire as the plan administrator and establishes that Broadspire has discretionary authority to determine claims. Moreover, the LTD plan is a fully insured plan. Unisys employees can elect coverage under the LTD plan and pay 100% of the premiums for the benefit. Thus, Unisys could not be liable to Fye for payment of LTD benefits, in any event. Broadspire is the only entity potentially liable on the insurance contract that forms the basis of the LTD Plan. The September 10, 2004, letter that upheld Broadspire's initial denial of the LTD claim is on Broadspire stationery and is signed by the Appeals Coordinator for Broadspire. (Dkt. 36, Ex. G, pp. 1-2.) All of Fye's counsel's correspondence while exhausting her administrative remedies under the LTD plan was with Broadspire, not with the Unisys or the Committee. (Id. at 3-5 & 8-11.) Paragraph 29 of the Complaint alleges that "Broadspire" refused to pay the benefits.

In Garren, the Eleventh Circuit relied on language in the employer's benefits plan nearly identical to the language at issue here to support its finding that the insurer was not a proper defendant. 114 F.3d at 186. The plan at issue in Garren specifically stated, "Georgia-Pacific Corporation is the Plan Administrator. . . with exclusive responsibility and complete discretionary authority to control the operation and administration of this Plan. . . and resolve all

interpretative, equitable, and other questions that shall arise in the operation of this Plan." Id. In this case, the roles are reversed and, based on the language in the Plan, it is clear that Unisys is not the proper defendant in an ERISA action on Fye's LTD benefits claim.

Even if Fye had named Broadspire as a Defendant in this action, the Court is convinced that Fye still would not be entitled to LTD benefits. To be entitled to LTD benefits, Fye must prove that she is unable to work a normal work week schedule due to a "disability" that has lasted longer than 26 weeks. To be considered "disabled" under the LTD Plan, Fye must show that it can be verified that she is unable, due to her disability, to perform the essential functions of her regular occupation. Fye cannot meet this burden. As the record establishes with respect to Fye's STD claim, her verifiable period of disability lasted, at most, for 17 ½ weeks. Therefore, Fye cannot show that she was unable to work a normal work week schedule due to a "disability" that lasted longer than 26 weeks.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

Defendant Unisys Corporation's Motion for Summary Judgment (dkt. 27) is granted. Plaintiff Elizabeth Fye's cross Motion for Summary Judgment (dkt. 38) is denied. The clerk shall enter judgment in favor of Defendant and against Plaintiff, terminate any pending motions, and close this case.

**DONE AND ORDERED** at Tampa, Florida, on March 14, 2007.

s/ Richard A. Lazzara

**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

21

**COPIES TO**:
Counsel of Record

.